[See Case No. 15,932b.]

---

## Case No. 15,932b.

UNITED STATES v. ONE HUNDRED FIFTY BALES UNWASHED WOOL.

[New York Times, April 12, 1861.]

District Court, S. D. New York. April, 1861.

CUSTOMS DUTIES—FORFEITURE FOR UNDERVALUATION—REPEAL OF STATUTES—CRIMINAL INTENT.

[1. Section 66 of the act of March 2. 1799 (1 Stat. 677). and section 4 of the act of May 28, 1830 (4 Stat. 409), which provide for the forfeiture of goods invoiced below their actual "cost," are still in force (1861), and have not been modified by subsequent legislation so as to require the invoice to be according to the "value" in the place of purchase. instead of actual cost. The cases, however, in which the actual cost is to be stated. are perhaps limited to purchases in the open market in the ordinary course of trade. thus excluding cases of purchase under circumstances calculated to depress the price below the market value.]

[2. To entail a forfeiture for undervaluation, under these sections, there must be a concurrence of undervaluation, and intent to evade the

payment of duties; and hence there can be no forfeiture of a bale of wool of superior grade and value, which was included, by mistake, with a shipment of bales of a lower grade, and invoiced at the same price with them.]

Judge Roosevelt, for the United States.

Gerard & Craig, for defendants.

Before SHIPMAN, District Judge. This is a libel of information in rem, founded upon the seizure of 150 bales containing unwashed wool, imported into the United States from Cape of Good Hope about the 27th of March, 1860, in the ship Tartar. The seizure was upon land, within this district. The cause having been tried by the jury, and a verdict rendered for the claimants [Case No. 15,932a], the libellants move for a new trial on the grounds, 1. That the verdict is against the evidence. 2. For a misdirection of the judge to the jury. The act of congress, March 3, 1857 [11 Stat. 192], among other articles, exempts from duty unmanufactured wool of the value of 20 cents per pound, or less, at the place of exportation. This wool in question was invoiced and entered at the custom-house at a little less than 20 cents per pound, and, if that was its true value at the place of exportation, it would of course be exempt from duty. If its value at the place of exportation was over 20 cents, then it was subject to a duty of 24 per cent. ad valorem. The collector had the wool appraised, and, the value fixed by the appraisers being over 20 cents, the wool was seized on the ground that it had been invoiced and entered at less than its value at the Cape. with intent to evade the payment of duties thereon, and was therefore forfeited. The libel is founded upon the 66th section of the act of March 2, 1799, and the 4th section of the act of May 28, 1830. The section of the former relied on provides that "if any goods, wares or merchandise. of which entry shall have been made in the office of a collector, shall not be invoiced at the actual cost thereof at the place of exportation. with a design to evade the duties thereon, or any part thereof, all such goods, wares and merchandise. or the value thereof, shall be forfeited." The 4th section of the act of 1830. after providing for the examination of packages by the collector, enacts that if such goods be subject to ad valorem duty, the same shall be appraised; and if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up with intent, by false valuation, or extension, or otherwise, to evade or defraud the revenue,. the same shall be forfeited.

So far as this motion for a new trial is founded upon the claim that the verdict was against the evidence, I am clear that it should be overruled. The evidence for the claimants was full and explicit, and, moreover, was that kind of evidence which the supreme court of the United States, in

the case of Clifton v. U. S., 4 How. [45 U. S.] 242, held to be the best in such cases. It was that kind of evidence which the libellants in this case failed to produce, although an open commission was sent to the Cape of Good Hope to take testimony, where they had a consul residing, and where the value of this wool could have been shown to be above 20 cents per lb., if such had been the fact.

It appeared on the trial, that one of the hundred and fifty bales seized, contained washed wool, of a fine quality, and that this bale was greatly undervalued, and it is insisted by the government, that this bale, at least, should have been forfeited by the jury, and that to that extent their verdict was clearly against the evidence, if the statute forfeited the merchandise solely on the ground of undervaluation. But the statute is explicit on this point. There must concur with the act of undervaluation, the "intent to evade and defraud the revenue." The tendency of the evidence went to show that this bale of washed wool was included in the consignment and in the invoice and entry by inadvertence and mistake. The testimony of the consignees is that they never knew that there was any such article in the consignment, until informed by the custom-house officers long after the seizure; that they offered the whole one hundred and fifty bales (including the washed bale) at the same price, supposing it all to be unwashed wool. It was conceded on the trial, or at least assumed by the court, upon the evidence, that this bale of washed wool was greatly undervalued in the invoice and entry, and the jury were instructed that if any such undervaluation was with intent to evade the payment of duties, they should forfeit it. The jury must have found that there was no fraudulent or illegal intent, and I see no reason for disturbing the verdict on that point. This motion, therefore, for a new trial, on the ground that the verdict was against the evidence, must be denied.

But it is claimed as another ground for a new trial, that the construction given by the court in the charge to the jury, of the two acts of congress referred to, and especially that given to the 66th section of the act of 1799, was erroneous. This was the main point of controversy on the trial.

The first count of the libel or information is founded upon the 66th section of the act of 1799, and the jury were instructed that if they should find that the wool was purchased bona fide at the Cape, in open market, in the ordinary course of trade, and that the invoice and entry truly stated the actual cost of the same at the place of exportation, it could not be forfeited, and their verdict must be for the claimants. But if the wool was obtained by the consignors in any other mode than by such bona fide purchase, they must then inquire

what was its true value at the Cape, and if the price at which it was invoiced and entered truly stated such value, then their verdict must be for the claimants. But, if the price on the invoice and entry was below the true value, and was inserted with intent to evade the duty, then their verdict must be for the government. It is strenuously insisted that this instruction to the jury, so far as it relates to the invoicing and entry of goods at their actual cost, under the act of 1799, is erroneous, although no case is cited in support of this claim. I am referred by the attorney for the government to the frequent use of the word "value" in the ·act of 1799, and in subsequent acts relating to the same subject, and it is urged that the only just and consistent construction is that which reads the words "actual cost" as meaning "actual value." A brief examination of the authorities will show that this claim is not well founded. This 66th section has been frequently subjected to judicial construction. In the case of U. S. v. Sixteen Packages [Case No. 16,-303], decided in 1819, which was an information founded on this section, Mr. Justice Story held that forfeiture was not inflicted if the goods were invoiced and entered at the actual cost of a bona fide purchase, although that might be below the actual value. In Ninety-Five Bales of Paper v. U. S. [Id. 10,274], decided in 1829, it was held, on appeal, by Livingston, C. J., that the term "actual cost" applied also to goods manufactured abroad by the importer, and by him exported to the United States. In that case it was decided that all that was to be added to the cost of the raw material was the price or value of the labor employed in the manufacture, and the expense of transportation to the seaport whence it was shipped to the United States, and that the sum of these three items was the proper one to be entered in the invoice and entry as the actual cost. From the remark of the secretary of the treasury, in his report to the house of representatives, 17th January, 1817, this would seem to be the view entertained by the collectors, and in accordance with their practice under it. As the law then stood it worked injustice to the merchant who purchased his goods in the foreign market, paying the market price for them; for it is obvious that the cost price of purchased goods, upon which cost price duties were to be assessed, would ordinarily be enhanced by an amount equal to the profit of the manufacturer, and thus, in effect, the purchaser of foreign goods who imported them would be compelled to pay a higher rate of duty than the foreign manufacturer who sent to the United States the goods to be manufactured. The act of April 20, 1818 [3 Stat. 433], and especially the act of March 1, 1823 [Id. 729], remedied the unequal operation of the law in some particulars. But the test of forfeiture of goods purchased in the foreign market, as

fixed by the 66th section of the act of 1799, still remained in full force. Indeed, the basis of valuation upon which duties were to be assessed remained unchanged notwithstanding the 5th section of the act of 1818 provided that the owner or importer should declare on oath that the invoice exhibited the true value of the goods in their then state of manufacture. In Tappan v. U. S. [Case No. 13,749], decided in 1822, Mr. Justice Story held, after a thorough discussion of the subject, that the cost price and not the real value was still the basis of valuation for the assessment of duties. A fortiori goods entered at their cost price in a bona fide purchase could not be forfeited because entered at cost. The same construction was given to the statutes as, they then stood, by the supreme court of the United States, in U. S. v. Tappan, 11 Wheat. [24 U. S.] 419. The latter case was argued by eminent counsel, and an elaborate opinion given by the court. In U. S. v. 12 Casks [Case No. 16,-553], which was an information on the 4th section of the act of 1830, decided in 1834, Mr. Justice Hopkinson held that, "Two tests of value are given by the revenue laws: 1. In case of the purchase of goods in a foreign place, exported to the United States, the true value at which they must be invoiced and entered is the actual cost and price at which they were sold and purchased. 2. In case of goods sent to this country by the manufacturer, on his own account, the true value at which they must be invoiced and entered, is the market price or value at the place of exportation." These are the precise tests submitted to the jury in the case now under consideration, with the liberal qualification for the government added that the purchase must be in the open market, in the ordinary course of trade, thus excluding such purchases as might be made under circumstances calculated to depress the price paid below that of the general market. This rule is believed to be not only warranted by the statute, but eminently just and reasonable in itself. No better or safer standard of value can be found than that which is fixed by the scale of prices paid in the market, in the course of bona fide sales. In Alfonso v. U. S. [Case No. 188], decided in 1843, which was a libel of information on this 66th section of the act of 1799, while deploring the endless embarrassments arising out of any attempt to fully harmonize and reconcile all the various separate acts of congress relating to the collection of the revenue, Judge Story still adhered to the construction of the act of 1799, as laid down by him in the cases in Mason, already cited. The supreme court of the United States have repeatedly held that the 66th section was not repealed, but remained in full force. This was either assumed or directly decided in Woods v. U. S., 16 Pet. [41 U. S.] 342; Clinton v. U. S., 4 How. [45 U. S.] 242; Buckley v. U. S., Id. 251. The controversy has been renewed from time to time, and as late as 1854 reappeared in the supreme court. In the case of U. S. v. Sixteen Packages, 17 How. [58 U. S.] 85, and in the three cases that follow in the same volume, it was held that the 66th section of the act of 1799 was still in full force. I judge from an examination of that case that the information was founded solely upon that section. And it was argued that it was repugnant to and repealed by the 13th and 15th section of the act of 1823, and by the 17th section of the act of 1842, and the court below so held. But the supreme court held that the latter acts had no such effect, and that the 66th section was still in force, reversing the judgment below. But the government concedes that this 66th section is not repealed, in the strict sense of that term. One of the counts in this information is founded upon it. Still it is earnestly urged that it is modified; that the word "cost" therein has lost its original signification, and by subsequent legislation has been transformed in meaning into "value.". In other words that congress has, in effect, struck out of the section the "cost," and inserted that of "value." We have already shown that this claim is not warranted by the decided cases, and we think it has no foundation in reason, or in any sound rule of construction. Such an interpretation would be calculated to mislead the unwary, and would convert a highly penal statute into a trap for the honest importer.

It is hardly necessary to add that the grounds upon which this case is disposed of do not reach the question as to the present basis of valuation, upon which duties are to be assessed. This is quite another and different subject. The penalties for mere undervaluation, whether in form of fines or additional duties, rest upon their own ground. In the case of this wool, if its value at the place of exportation was over 20 cents per pound, then it was liable to a duty of 24 per cent. But that is not the question now before the court, nor the one presented to the jury. The only question disposed of is, can this wool, having been purchased at the Cape of Good Hope, bona fide, in the open market, in the ordinary course of trade, and invoiced and entered at its cost truly stated, be forfeited? I think it cannot. The motion for a new trial must therefore be overruled, and judgment be entered for the claimants, discharging the goods from the custody of the marshal.